Lloyd A. Fry Roofing Company v. Commissioner.
Lloyd A. Fry Roofing Co. v. Commissioner
Docket No. 4790-67.
United States Tax Court
T.C. Memo 1970-298; 1970 Tax Ct. Memo LEXIS 61; 29 T.C.M. (CCH) 1382; T.C.M. (RIA) 70298; October 26, 1970, Filed Burton Y. Weitzenfeld and Gerald Brown, for the petitioner. James E. Caldwell and Charles E. Lomax, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years ended October 31, 1961, and October 31, 1963, in the respective amounts of $95,750.32 *62 and $3,497.93. Certain issues having been conceded, the only issue remaining for decision is the fair market value of property contributed by petitioner to a charitable organization, in the taxable year ended October 31, 1961. Such value will determine whether petitioner is entitled to a charitable deduction carryover to the taxable year ended October 31, 1963. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioner was incorporated on November 9, 1935, under the laws of the state of Delaware. Its principal place of business during the taxable years ended October 31, 1961, and October 31, 1963, and at the time of the filing of the petition herein, was Summit, Illinois. Its principal business activity is the manufacture of asphalt roofing materials and allied products. It filed its Federal income tax returns for the taxable years ended October 31, 1961, and October 31, 1963, with the district director of internal revenue, Chicago, Illinois. On August 30, 1961, the petitioner donated the land and buildings known as the Volney Felt Mill to the Young Men's Christian Association of Fulton, New York (hereinafter referred *63 to as the YMCA). The Volney Felt Mill is located on the corner of North First Street and Oneida Street, Fulton, Oswego County, New York, which is the commercial-industrial area of Fulton. Such area consists mostly of old buildings. The Volney Felt Mill property consists of 2.116 acres of land and mill buildings located thereon. The Volney Felt Mill was used by petitioner in its manufacturing business until June 1961 when it terminated its operations and removed all machinery and equipment from the plant. The Fulton YMCA was organized in September 1960. At that time it had no building facilities and no funds with which to purchase any. In 1961, it solicited the donation of the Volney Felt Mill from the petitioner. The YMCA intended to convert the buildings into a YMCA building with all the facilities normally attributed to a YMCA. The Volney Felt Mill had the open spaces and concrete floors necessary to the YMCA's purpose. After receiving the property, the YMCA sought the advice of its national council as to its conversion plans. An architect from the national council inspected the buildings and concluded that while the space available was sufficient the cost of conversion, being *64 between $900,000 and $1,000,000, was prohibitive. At that time the YMCA had no funds with which to maintain the buildings and decided to sell the property to the first prospective purchaser. It did not advertise the property or place it with a real estate broker and made no other attempts to sell it. On May 15, 1962, it sold the property to MacCan Enterprises, Inc. (hereinafter referred to as MacCan) for $1,000 in cash and the assumption by MacCan of unpaid real estate taxes of approximately $11,000. MacCan had been incorporated in 1962 under the laws of the state of New York for the purpose of acquiring and trying to develop the Volney Felt Mill as a warehouse. It had an initial capitalization of $4,000. In August 1963, MacCan had the property appraised in an attempt to obtain funds so that it could be put in a condition to make money. Neither the local banks nor the Small Business Administration would loan the corporation any money. The only funds received by MacCan were from people who purchased its stock. It became apparent in 1964 that MacCan would be unable to obtain the funds necessary to do anything with the property, and it ceased using it. Up to that time it had been *65 able to lease only a small portion of the buildings to a person conducting a rental business. On November 26, 1965, the Volney Felt Mill was sold at a tax sale to satisfy three years' delinquent taxes. 1384 The Volney Felt Mill has approximately 414-foot frontage on North First Street and is approximately 275 feet in depth. Part of the lot on the north side is not suitable for building purposes since a canal runs through this part of the lot. The balance of the lot not occupied by buildings has a steep grade and would require a large quantity of fill and a retaining wall to make it suitable for building. The property is zoned for manufacturing and commercial uses. Water and sewer services are provided by the City of Fulton. Gas and electricity are available from public utilities. The adjoining road surfaces are macadam. There are no curbs or sidewalks. On the property are a number of buildings constructed of concrete reinforced with steel rods. There is a floor area of approximately 60,000 square feet on three levels. There is a boiler room and an industrial smokestack approximately 130 feet in height. There is also a front loading dock and drive-in access to a side dock. *66 At some undisclosed time prior to the donation of the property to the YMCA the petitioner had made building improvements at a cost of $6,142.30 and added a railroad siding at a cost of $14,847.47. Up to May 15, 1962, the Volney Felt Mill was assessed for real estate tax purposes by the City of Fulton at $90,000, of which $15,000 was allocated as value of the land. The assessment was made at a 31% valuation rate. This assessment resulted in a real estate tax of approximately $10,000 per year. On May 15, 1962, when MacCan purchased the property the total assessment was reduced to $25,000. During most of the time that petitioner operated the Volney Felt Mill it carried fire and extended coverage insurance on the buildings. Coverage totalling $268,000 was obtained from a number of insurance companies in connection with insurance covering other operating plants of the petitioner. The insurable amount for the Volney Felt Mill was based upon the replacement cost less depreciation. On November 1, 1960, the petitioner cancelled all of the insurance coverage on the Volney Felt Mill. The Volney Felt Mill was used by the petitioner for the manufacture of felt and paper. At the time of its *67 transfer to the YMCA the buildings were almost 80 years old and were physically, functionally, and economically completely depreciated. The property had reached the end of its useful life as a mill. It had possible potential use for warehousing, manufacturing, wholesale trade, retail trade, and public assembly. However, there was very little demand for property of this type in Fulton in 1961. In 1961, the City of Fulton had a population of 14,200. In the area of the Volney Felt Mill there were several other similar type mills that had reached the end of their useful lives as mills and were either closed or in the process of closing at that time. During the period from 1959 through 1963, the demand in Fulton for properties of this type remained static. On February 16, 1959, the Victoria Paper Mill was sold for $15,000. This property was comparable to the Volney Felt Mill. It consisted of a two-story masonry building approximately 60 years old and in poor condition, which had formerly been used as a paper manufacturing plant. It was located on the east side of North First Street in Fulton just north of the Volney Felt Mill and had a frontage of 251 feet on North First Street with *68 about 368 feet in the rear and was approximately 250 feet in depth. The building had reached the end of its useful life and the purchaser tore it down. On July 18, 1962, the American Woolen Mill property was sold for $22,500. This property was comparable to the Volney Felt Mill. It consisted of a three-story brick building, approximately 60 years old and in poor condition, which had been used as a mill. It was located on the east side of West First Street just south of West Broadway in Fulton and had a frontage of 349.45 feet on West First Street and was approximately 130 feet deep on the north side and approximately 91 feet deep on the south side. The building had reached the end of its useful life and was torn down by the purchaser. The lot was smaller in size than the Volney Felt Mill, but was in a similar location and would require less fill for building purposes. Sometime prior to August 1963, the Excelsior Mill was sold for $19,000. It was comparable to the Volney Felt Mill. It was a mill property constructed of masonry that had reached the end of its useful life as a mill property. Subsequent to the sale, the purchaser used the property for warehousing, storage and office *69 space. As of August 30, 1961, the buildings located on the Volney Felt Mill were of no value. The highest and best use for the 1385 property was to tear down the old buildings and sell it as a building site. On its Federal income tax return for the taxable year ended October 31, 1961, the petitioner reported a charitable contribution of $325,000, stating that this represented the value of the Volney Felt Mill determined by reference to a licensed appraiser's report, the assessor's appraisal and valuation for insurance purposes. It claimed a charitable deduction with respect thereto of $149,401.05, representing 5% of reported taxable income. On its Federal income tax return for the taxable year ended October 31, 1962, petitioner reported a net operating loss and therefore did not claim a charitable contribution deduction based upon the carryover of the unusued portion of the charitable contribution claimed in the prior year. For the taxable year ended October 31, 1963, the petitioner reported a net profit on its Federal income tax return and claimed a charitable contribution deduction of $73,991.78 based upon the unusued portion of the charitable contribution claimed in the *70 taxable year ended October 31, 1961. In the notice of deficiency, the respondent determined that it had not been established that the fair market value of the Volney Felt Mill at the time of contribution was in excess of $12,004.88. Accordingly, respondent disallowed the charitable contribution deduction for the taxable year ended October 31, 1961, in excess of that amount and determined that there was no unused charitable contribution available to carry over as a deduction to the taxable year ended October 31, 1963. The fair market value of the Volney Felt Mill property as of August 30, 1961, was $25,000. Opinion The respondent concedes that the Fulton YMCA was an organization described in section 170(c)(2) of the Internal Revenue Code of 1954, and that the petitioner is entitled to a deduction for a charitable contribution as a result of the transfer by petitioner of the Volney Felt Mill to the YMCA. The only issue presented is the amount of the allowable deduction. Section 170(a) provides that a contribution will be deductible if verified under regulations prescribed by the Secretary or his delegate. [1]
*71 Section 1.170-1(c) of the Income Tax Regulations[2] provides that if a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. Fair market value is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. In its income tax return for the taxable year ended October 31, 1961, the petitioner claimed that the fair market value of the Volney Felt Mill at the time of the transfer was $325,000. On brief it contends that *72 the property had a fair market value of at least $258,000. In support of its position, the petitioner offered the testimony of a real estate appraiser and evidence as to the valuation of the property for real estate taxes and for purposes of insurance. The respondent determined that the property had a value of $12,004.88, the amount at which the property was sold by the YMCA in May 1962. On brief he contends that such sale is determinative of the value, but that if not, then the value did not exceed $25,000. In support of his position the respondent offered, among other things, the testimony of two appraisers who testified as to sales of other properties. After a careful consideration of all the evidence, including the expert testimony, we have concluded and have found as a fact that the fair market value of the Volney Felt Mill property on August 30, 1961, was $25,000. The evidence shows that this property was located in the commercial-industrial area of Fulton, New York, which then had a population of 14,200. The mill was almost 80 years old and had reached the end of its usefulness as a mill and could only be used for other purposes. It was surrounded by other equally aged mill *73 properties which had reached the ends of their 1386 useful lives and were either closed or were in the process of closing. There was no demand for such properties for use as mills. Although the buildings on the property in question had some potential for alternative uses, there was little demand therefor. This is borne out by the inability of the purchaser from the YMCA to put the property into productive use. These conditions were static during the period 1959 through 1963. It is our conclusion that the buildings were of little or no use in 1961, and that the best use for the property would have been to remove the buildings and sell the land as a building site. One of the respondent's witnesses testified that the fair market value of the property at August 30, 1961, was $20,000 and the other testified to a fair market value of $25,000. These witnesses based their opinions in part upon three sales of comparable mill properties during the period 1959 to 1963 for $15,000, $22,500, and $19,000, respectively. Based upon this evidence of sales of comparable properties and the opinions of such witnesses, we have arrived at the conclusion that the property in question at the date of *74 transfer had a value of $25,000. In reaching this conclusion we have rejected the contention of the respondent that the value of the property is to be determined by the price of $12,004.88 at which it was sold on May 15, 1962, by the YMCA to MacCan. The petitioner had no control over the disposition of the property at that time, and the evidence shows that the YMCA was under at least an economic compulsion to dispose of the property with minimum delay. Under the circumstances we do not think that the sales price is determinative of the fair market value of the property as of the time of transfer. See Daniel S. McGuire, 44 T.C. 801. The appraiser called by the petitioner testified that the fair market value of the property at the time of the transfer was $258,000. In urging our acceptance of this opinion, the petitioner points out that this witness fixed such value in an appraisal made at the request of the YMCA, and not at the request of the petitioner, at the time of the transfer. The witness testified that in reaching his opinion he took into consideration the highest and best use for the property, the site, the utilities, the topography of the land, the land area, *75 land values in the area, and rental income. He also testified that he used the cost of reconstruction less depreciation to arrive at a fair market value for the buildings of approximately $199,000 and determined the land to be worth $59,000. However, in so testifying, he did not establish that there was any relationship between reconstruction cost and fair market value by showing that there existed at that time any demand for buildings of this type. Indeed, as stated above, there was very little, if any, demand for buildings such as the Volney Felt Mill. Under the circumstances, we do not feel that the reconstruction cost of a building for which there was no significant demand is an indication of its fair market value. As to the other factors enumerated, the witness did not set forth any of the facts in relation thereto, nor did he establish that there was any demand for the Volney Felt Mill based upon these factors. All that is stated is that these unspecified factors were somehow taken into consideration in arriving at an opinion as to value. Under the circumstances, we attach little weight to the opinion of this witness. The petitioner also relies upon the fact that the property *76 was assessed for real estate tax purposes by the City of Fulton at $90,000. It argues that since this was done at a 31% valuation rate, the property had a value of approximately $270,000. Frankly, we are at a loss to understand why the property in 1961 remained assessed at such an amount, in view of the conditions existing with regard to mill properties as described above. In any event, we note that shortly after the property was transferred to the YMCA the assessment was reduced to $25,000 when it was sold by the YMCA to MacCan. There is no evidence as to how such assessed valuation was determined or whether it purported to be full fair market value or a percentage thereof. Under the circumstances we are unable to conclude that the assessments for local tax purposes are indicative of a fair market value of the property of more than $25,000 at the time of its transfer to the YMCA. Petitioner also relies upon the fact that the buildings were insured at a value of $268,000. It argues that the loss recoverable is limited to the value at the time of the loss and that it would not have paid premiums upon a valuation which would not be recoverable in the event of loss. However, we are *77 not persuaded by this reasoning. The amount at which the buildings were insured was based upon reconstruction cost less depreciation. As pointed out above, the 1387 reconstruction cost less depreciation is not indicative of fair market value under the existing circumstances. Furthermore, we note that the petitioner cancelled all the insurance on the buildings on November 1, 1960, approximately 10 months before the transfer of the property to the YMCA. We have accordingly concluded that the valuation for insurance purposes is of little or no weight in determining the fair market value of the property at August 30, 1961. Decision will be entered under Rule 50. Footnotes
1. Section 170(a)(1) provides as follows: (a) Allowance of Deduction. - (1) General rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.↩
2. Section 1.170-1(c) provides in part as follows: (c) Contribution in property - (1) General rules. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * *↩